IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                      **REPORT AND**
                                      **RECOMMENDATION**

v.

AYMAN ABDELLATIF,                    09-CR-97(A)(M)
                Defendant.

_____

        This case was referred to me by Hon. Richard J. Arcara for supervision of all pretrial proceedings [65].[1] Before me is defendant's motion to suppress statements and physical evidence [68]. An evidentiary hearing was held before me on January 28, 2010, at which ICE Special Agent ("SA") Matthew Scarpino and Niagara Falls Police Department Detective John Galie testified on behalf of the government. Defendant called no witnesses at the hearing.[2]

        For the following reasons, I recommend that the motion be granted in part and denied in part.

---

[1]     Bracketed references are to CM-ECF docket entries.

[2]     Defense counsel indicated at the conclusion of the hearing that he would obtain a transcript prior to submission of post-hearing briefs. However, when I inquired as to the whereabouts of the transcript on August 12, 2010, he suggested that if the transcript was not available within the next two weeks, he would submit his post-hearing brief without the benefit of a formal transcript, and counsel for the government agreed to this procedure. *See* August 12, 2010 proceedings and Text Order [101, 102]. Accordingly, in preparing this Report and Recommendation, I have relied upon my review of the hearing exhibits and my own recollection of the witnesses' testimony, along with my contemporaneous hearing notes and my secretary's informal transcription of the recorded proceedings. If objections to this Report and Recommendation are filed, the objecting party should file the hearing transcript for Judge Arcara's *de novo* review. In the alternative, he may base that review on the recorded testimony of the hearing. *See* McKnight v. United States, 2009 WL 424006, *4 (S.D.Ga. 2009).

## BACKGROUND

Defendant and his brother Mohammed Abdellatif are charged in an indictment [40] with conspiracy to import controlled substances, in violation of 21 U.S.C. §963. At the suppression hearing, SA Scarpino testified that shortly before 7:00 a.m. on August 20, 2008, he, along with Detective Galie and approximately 10 other agents, arrived at defendant's residence, a single family home at 191 Fareway Lane, Grand Island, New York to execute a search warrant for the premises and an arrest warrant for defendant. Upon arrival, they knocked and announced their presence, then breached the door with a ramrod after waiting 3 to 5 seconds. Upon entering the home, they secured the premises and saw defendant and his brother, Faras.

Defendant asked SA Scarpino why they were there, and he told him that they had arrest and search warrants. He showed the warrants to defendant and let him read them. Defendant was placed under arrest and taken to a couch in the living room. Although defendant was initially handcuffed, the cuffs were taken off prior to questioning. SA Scarpino made handwritten notes of their conversation (government Ex. 2). After asking defendant a few preliminary questions to obtain basic background information (such as date of birth, family history, employment and educational background), at approximately 7:15 a.m. he administered *Miranda* warnings to defendant, reading them from a printed card (government Ex. 1). He paused between each warning and obtained defendant's acknowledgment that he understood his rights. He had no difficulty in conversing with defendant, and defendant responded appropriately to his inquiries. Defendant did not appear to be intoxicated or incoherent.

After administering the *Miranda* warnings, he asked defendant if he knew why they were there. Defendant responded that he knew this was over marijuana, and that "she can say whatever she wants" (*see* government Ex. 2, p. 2). Defendant did not identify who "she" was, but SA Scarpino inferred that it was a woman who was arrested with marijuana at the Rainbow Bridge in Niagara Falls. At approximately 7:30 am, defendant said that he did not want to continue the interview, and that he wished to speak with his attorney, Thomas Eoannou. At that point, the questioning ceased.

At some point during the conversation, defendant mentioned that he was attending a methadone clinic daily because he was addicted to pain pills, and asked that they bring him to a methadone clinic before taking him to court, stating that he needed to get his medication by late morning or he would begin to suffer withdrawal symptoms. However, at the time of their conversation he did not appear to be suffering from withdrawal. Other agents subsequently took him to the clinic.

During the search of the premises, other agents seized an AR-15 rifle which was registered to Faras Abdellatif, defendant's brother. They also seized a magazine clip from under the couch. At that point, defendant volunteered that he had placed the clip there and had scattered magazine clips in three other locations in the house. That statement was not made in response to a question, and is not reflected in SA Scarpino's notes, since his interview with defendant had concluded by that time.

Detective Galie corroborated SA Scarpino's testimony. He observed SA Scarpino questioning defendant, and stated that defendant did not seem to have difficulty understanding or answering the questions. He heard SA Scarpino administer the *Miranda* warnings to defendant,

who acknowledged that he understood them. He agreed that defendant did not appear to be intoxicated or under the influence of drugs. He heard defendant state "what do I got - a minor marijuana charge? You can believe anything the girl says". After defendant asked to consult with his attorney, the interview ceased.

**ANALYSIS**

**A.     Credibility Assessment**

Having observed the demeanor of both witnesses as well as considering the substance of their testimony, I find them to be credible. Moreover, I note that their testimony is uncontradicted, since defendant did not testify. I draw no adverse inference from that failure, but merely indicate that "by not testifying, defendant ha[s] failed to contradict the government's evidence with his own testimony . . . . even though he might have done so without risk that anything he said could be later used against him at trial". United States v. Male Juvenile, 121 F.3d 34, 42 (2d Cir. 1997); United States v. Mason, 660 F.Supp.2d 479, 490 (W.D.N.Y. 2009) (Arcara, J./McCarthy, M.J.).

**B.     Suppression of Statements**

Since defendant was clearly in custody at the time he was questioned, the government bears the burden of proving defendant's "knowing and voluntary waiver of his *Miranda* rights . . . . by a preponderance of the evidence". Male Juvenile, 121 F.3d at 39.

"In order to prove that defendant validly waived his constitutional rights, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of

waiving that right. Only if the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." Mason, 660 F.Supp.2d at 486-87; Male Juvenile, 121 F.3d at 39-40. "The test for determining the voluntariness of a confession is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." Mason, 660 F. Supp.2d at 487.

Both SA Scarpino and detective Galie testified that defendant appeared to be coherent and to understand what he was doing. Defendant argues that "the fact that [he] indicated the need for his medication belies that testimony. Indeed, the officers testified that after the initial conversations, [defendant] indicated that he both needed his medication and that he would refuse to answer any further questions." Defendant's Memorandum of Law [105], p. 6. I disagree. While defendant did ask to be taken to the methadone clinic, he also stated that he would not begin to suffer withdrawal symptoms until late morning if he did not receive his medicine. However, his interrogation occurred long before that time, and during the questioning, he appeared to be coherent.

Moreover, the fact that he subsequently stated that he would not answer further questions until he spoke to his attorney strongly suggests that his statements prior to that time were voluntarily made. "Perhaps the most compelling evidence that defendant's free will was not overborne by law enforcement officers is the fact that - on more than one occasion - he refused to comply with their requests . . . . The fact that defendant knew how to say 'no' leads me to conclude that his 'yes' meant 'yes'." Mason, 660 F. Supp.2d at 490.

Defendant also argues that his "statement relative to the weapon and the magazine must likewise be suppressed" because he "invoked his right to counsel prior to being questioned about the weapon and the magazine". Defendant's Memorandum of Law [105], p. 7. Again, I disagree. Although "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him", Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), that rule does not apply where "the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 485.

Here, the witnesses testified that defendant volunteered these statements after invoking his right to counsel. Therefore, they need not be suppressed. *See* Stephanski v. Superintendent of Upstate Correctional Facility, 433 F. Supp.2d 273, 287 (W.D.N.Y. 2006) (Bianchini,M.J.) ("after asking for an attorney, Stephanski initiated further conversation with Investigator Hinkley, effectively bringing himself squarely within the ambit of Edwards . . . . Thus, the Court has no difficulty concluding that . . . petitioner's statement was voluntarily made and admissible").

**C.     Suppression of Physical Evidence**

      **1.          *Franks* Hearing**

Defendant requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), arguing that the affidavit in support of the search warrant mischaracterized the contents of intercepted telephone conversations by stating that defendant mentioned marijuana when the conversations themselves did not. Greenman Affidavit [68], ¶¶18-23.

In order to obtain a Franks hearing, defendant must "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause". Franks, 438 U.S. at 155-56. "To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant . . . . If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).

I have reviewed the recorded conversations *in camera*. While it is true that they do not specifically mention marijuana, when the conversations are considered in context of the other facts set forth in the affidavit submitted in support of the search warrant, I have little doubt that marijuana is what was being referred to - meaning that the affidavit was neither knowingly false nor in reckless disregard for the truth. Moreover, even if the conversations are ignored, the remainder of the affidavit - including numerous statements from the confidential informant implicating defendant in marijuana trafficking - contains more than enough information to establish probable cause.

For these reasons, I conclude that defendant is not entitled to a Franks hearing.

## 2. Overbreadth

While claiming that he has not been provided with a copy of the schedule attached to the search warrant (Greenman Affidavit [68], ¶25),[3] defendant nevertheless argues that "the search warrant is overbroad and allowed agents unfettered discretion to search for items". Id., ¶26. I disagree. The warrant is no more broad - and no less particular - than that upheld by Judge Arcara in United States v. Smith, 2007 WL 2088938 (W.D.N.Y. 2007) (Arcara, J.).

Defendant's real quarrel is not with the breadth of the warrant, but with the breadth of the search and seizure. "For example, items were seized which were not set forth in the search warrant or the application itself. (computer)." Greenman Affidavit [68], ¶26. Among the items seized was a "Sony Laptop Computer" belonging to defendant. Defendant's Ex. 2 (reverse side).

## 3. Seizure of Laptop Computer

By failing to respond to defendant's argument that the computer was outside the scope of the warrant, the government "ha[s] essentially conceded the point". Briscoe v. City of New Haven, 2010 WL 2794231, *5 (D.Conn. 2010).

"There is no question that computers are capable of storing immense amounts of information and often contain a great deal of private information. Searches of computers therefore often involve a degree of intrusiveness much greater in quantity, if not different in kind, from searches of other containers. Such considerations commonly support the need specifically

---

[3] I have verified that the schedule attached to the warrant itself is identical to the schedule attached to the warrant application which is annexed to defendant's motion [68].

to authorize the search of computers in a search warrant." United States v. v. Payton, 573 F.3d 859, 861-62 (9th Cir. 2009). See, e.g., ¶7(a-e) of the schedule attached to the search warrant in United States v. Tigano, 08-CR-281S (Dkt. #52 in that case), specifically authorizing the search of computers.

Since the seizure of the computer was not authorized by the warrant, the government bears the burden of proving the legality of that seizure. See United States v. Poulos, 2008 WL 222272, *12 (D.Me. 2008), adopted, 2008 WL 619406 (D.Me. 2008) ("The government concedes that seizure of these items was not authorized by the Warrant but asserts that officers validly seized them inasmuch as they were in plain view . . . . The government meets its burden of proving the validity of their seizure"). The government has offered no justification for the seizure of the computer, nor has it argued that the seizure does not warrant suppression.[4] Therefore, I recommend that any evidence derived from the seizure of the computer be suppressed.

However, that does not affect the validity of the seizure of the other evidence, which was within the scope of the warrant. "As a general rule, if officers executing a search

---

[4] See United States v. Shaw 2009 WL 5842114, *12 (W.D.Ky. 2009), rejected on other grounds, 2010 WL 431225 (W.D.Ky. 2010) ("Ordinarily, at this point, the Court would take up consideration of whether the search might otherwise remain lawful under the good faith exception established in United States v. Leon, 468 U.S. 897 (1984). The Court does not address the *Leon* good faith exception in the present case, however, for the simple reason that the United States has failed to raise this issue in its response to the Defendant's motion to suppress. In other words, the Government does not maintain in the alternative that should the Court find the search warrant affidavit to be insufficient, the search nevertheless must be upheld because a reasonably well-trained officer would objectively rely in good faith on the issuance of the search warrant despite its unlawfulness. Because the Government has chosen not to raise the *Leon* good faith argument as an alternative basis on which to uphold the search, the United States has waived its opportunity to do so").

warrant exceed the scope of the warrant, only the improperly-seized evidence will be suppressed; the properly-seized evidence remains admissible." United States v. Squillacote, 221 F.3d 542, 556 (4th Cir. 2000), cert. denied, 532 U.S. 971 (2001).

## CONCLUSION

For these reasons, I recommend that defendant's motion to suppress [68] be granted to the extent of suppressing evidence obtained from the laptop computer, but otherwise denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 8, 2010 (applying the time frames set forth in Fed. R. Crim. P. 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with

the provisions of Rule 58.2(a)(3) may result in the district judge's refusal to consider the objection.


DATED:     October 20, 2010

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge